JOHN LOW vs. COMMISSIONERS OF PILOTAGE.

## Certiorari.

In tribunals of special and limited jurisdiction, every fact or thing essential to confer the jurisdiction, must in some manner appear in their proceedings.

Tribunals of summary and extraordinary jurisdiction, are to be reviewed with the utmost liberality as regards regularity and form.

The 7th Sec. of the Legislative Act of 1799, directs that the license of a Pilot shall be revoked by the Commissioners of Pilotage, "if he shall be found not sufficiently skilled, or shall become incapable of acting, or shall be negligent, or misbehave in his duty towards the Commissioners;" *held*, that the neglect of a Pilot, in not boarding a vessel when he ought to have done so, would authorize his suspension under this section.

And it is not necessary to make the sentence of suspension legal, that a formal judgment should be entered up.

The office of a Pilot is not a public one; it is a private profession, trade or calling.

If a party suffers improper evidence to be admitted without objecting at the time, it is a waiver of the objection.

*So*, if after an adjournment irregularly granted, he appears and goes to trial.

*It seems*, that the right of adjournment may be exercised by any tribunal, when essential to the ends of justice.

The Legislative Act of Georgia, authorized the Corporation of Savannah to *elect* Commissioners of Pilotage : several of the Commissioners were afterwards appointed by the Corporation, by *resolution:* *held*, that as the statute prescribed no mode of election, this was a good exercise of the power conferred.

The States retain the power to legislate upon the subject of Pilotage, within their own territories and over their own citizens, unless such legislation interfere with, or is contrary to an Act of Congress, passed in pursuance of the Constitution.

*It seems*, that the constitutionality of a legislative act cannot be decided on, on application for certiorari, or other summary way.

The negligence of a Pilot, which authorizes his suspension, is not a "*crime*" or "*criminal proceeding*," within the meaning of the Constitution of the United States, or the amendments thereof.

Neither is the proceeding against him under the Legislative Acts of Georgia, a "suit at common law," within the meaning of the VII Art. of the amendments of the Constitution U. S.

The provision of the Constitution of Georgia, which directs that "trial by Jury as *heretofore* used in this State, shall remain inviolate," does not apply to a summary jurisdiction, (such as

·the Commissioners of Pilotage) existing in Georgia, *before* the adoption of tho Constitution, and recognized by contemporaneous legislation, judicial exposition, and continual acquiescence.

If there be a *doubt* upon the constitutionality of a law, the law ought to be sustained.

## By LAW, Judge. ·

**THIS** case comes before me upon the return of the Commissioners of Pilotage to a writ of certiorari, to bring up their proceedings, suspending the petitioner, *John Low,* from acting as a pilot for the port of Savannah, and annulling the license heretofore granted to him for that purpose.   A variety of exceptions have been taken and insisted on to these proceedings, as disclosed by the return, which it has become necessary for me to consider and to dispose of.

And first, it is said that the Board of Commissioners being a Court of special and limited juridiction, can take nothing by implication, but must show its authority upon the face of its proceedings in every instance.   In the correctness of this proposition **I** entirely acquiesce, so far as the authority and jurisdiction of the Commissioners are involved.   And that we may the better understand, and be enabled the more accurately to apply this principle to the present case, I remark, that these special and limited jurisdictions are circumscribed, either with reference to place or the local extent within which their jurisdiction is ·to be exercised : as a *court leet* in England, which is confined to some particular precinct, or a corporation whose jurisdiction is co-extensive with their corporate limits ; or secondly, with reference to the person, or particular description of persons, who are subject to their jurisdiction, as in the case of the *Marshalsea* (10 *Co.*) where the authority of the Steward and Marshal, as Judges of the Marshalsea, is limited to those of the King's house ; or the case of assignees under a commission of bankruptcy, proceeding against a victualler, or other person not liable to·be a bankrupt, whilst their jurisdiction is limited to a trader.   (2 *Wils.* 382.)   Such jurisdictions

are again circumscribed with reference to the subject matter of their jurisdiction: And here it is to be observed, that every fact or thing essential to make the case upon which the jurisdiction attaches, must in some manner appear in the proceedings. As in the case of a conviction by a justice of the peace for fishing in a fish pond, contrary to 5 *Geo.* 3, ch. 4, the Court all concurred in holding the conviction bad, because it was not shewn to have been upon complaint of the owner, (a fact required by the act,) and they held that it ought at least to appear that the fishing was without his consent. (*Burr.* 2281.) It is said by the Supreme Court of the United States, that where a Court exercises an extraordinary power, under a special statute, the facts which give jurisdiction, ought to appear, in order to shew that its proceeedings are *coram judice.* It was consequently held, that (under a law of one of the States,) the return of the Sheriff, that there were no goods and chattels of the delinquent proprietor out of which the taxes could be made, was essential to the validity of the sale of tands for taxes, and that such return must appear on the record of the Court, by which the order of sale is made. Turning to the act from which the Commissioners of Pilotage derive at once their existence and authority, it will be found that their jurisdiction is limited to the Bar of Tybee and river *Savannah,* and the Bars north of *St. Catharine's Bar.* Their authority embraces that description of persons who pursue the business or profession of a Pilot within these limits, and the right to suspend from the enjoyment and exercise of that profession, may perhaps be better understood by recurring to the 7th Sect. of the Act., " If any of the Pilots for the ports aforesaid, for the time being, shall be found not sufficiently skilled, or shall become incapable of acting, or shall be negligent or misbehave in his duty to the Commissioners, or any one of them, then and in such case, the warrant or license may be annulled or revoked" &c. If therefore the Commissioners of the Pilotage give judgment or entertain jurisdiction of a cause arising, or an act occuring in another place, and against

[John Low vs. Commissioners of Pilotage.]

persons, other than those specified in the Statute, or if they proceed to suspend for other matters or causes than those enumerated in the 7th Sect. their acts would be *coram non judice*, and
void. But since they take nothing by implication, since nothing
is presumed for the purpose of supporting their jurisdiction, all
these facts must in some manner appear in their proceedings. It
is however, to be observed, that as the Statute prescribed no form
or mode of proceeding, the Commissioners, as I remarked upon a
former occasion, must adopt their own mode of proceeding, having a due regard to the great principles of natural justice, which .
control the forms and proceedings of all Courts. Unversed in
technical nicety and legal precision, the course pursued by them
is of the simplest kind ; no regular charge in writing seems to
have been made out; and we are constrained to look to the summons served on the defendant, to the testimony taken in the case
and reduced to writing, and which has been filed with the return,
together with the sentence or order finally passed on the case.
The case was entered upon the docket of the Commissioners
(which was called by the chairman,) in the following manner:
" Commissioners &c. vs. *John Low*, (Pilot) for negligence and inattention to his duty as a Pilot, in not boarding the ship Helen
Mar, on the 29th September 1829." The first summons served
upon the defendant, required him to appear before the Commissioners of Pilotage for Bar of Tybee and river Savannah, at a particular time and place therein stated, to answer a charge of negligence
and inattention to duty as a Pilot, in not boarding the ship Helen
Mar, on &c. In obedience to the summons, Mr. *Low* appeared,
was himself examined, and cross-examined the witnesses who appeared against him. By the written testimony it is shewn, that the
ship Helen Mar was lying below, in the river Savannah, in want
of a Pilot ; that the defendant *Low*, passed her in the night, and
neglected to go on board, although he had been informed that she
wanted a Pilot. Although evidence will not be received in this

Part ii.—N. 2.

case for the purpose of investigating the merits of the case, it may make a part of the transcript or return, for the purpose of shewing any fact necessary to sustain the jurisdiction. The character in which *Low* was proceeded against, abundantly appears from the whole of the return. It does appear to me, therefore, that every thing necessary to sustain the jurisdiction of the Commissioners, is apparent upon their proceedings. But whilst the charge of negligence sufficiently appears upon their proceedings, it remains to inquire, whether negligence is a cause of suspension under the 7th Sect. of the Act of 1799 ; and this is made a distinct ground of exception. " Not sufficiently skilled, or shall become incapable of acting, or shall be negligent or misbehave in his duty to the Commissioners." It has been supposed that the term " shall be negligent," is confined like the expression, " misbehave," to negligence in his duty to the Commissioners ; and that this neglect or misbehaviour in his duty to the Commissioners, is to be construed by reference to the definite ideas contained in the same section, viz : want of skill, and incapacity ; from which it would result, that the Pilot could not be suspended for negligence merely, but for negligence in his duty to the Commissioners, arising from want of skill or incapacity, or to use the language of counsel, " an obstinate and sullen contumacy, amounting to a voluntary disqualification to act." After the most critical examination I have been able to make, I have taken a different view of this section. By referring to *Mar. & Craw.* Dig. the punctuation will be found different from that in *Prince.* The member of the sentence " shall be negligent," is separated by a comma from the other member, " misbehave in his duty to the Commissioners." By referring to the oath in the 4th Sect. of the same Act, the Pilot swears that he will, from time to time, truly observe, fulfil and follow, to the best of his skill, ability and knowledge, all such orders as he shall from time to time, receive from the Commissioners of Pilotage ; in addition to this, he also swears that he will well and truly execute, and discharge the business and duty of a Pilot in the said port &c. according to the

best of his skill and knowledge; and that he will at all times (wind and weather permitting,) use his best endeavors to repair on board all ships and vessels, that he shall conceive to be bound for, coming into, or going out of, the said port or harbor, and that appear to want a Pilot. Now to construe the expression " shall be negligent," as restricted to his obedience of the orders of the Commissioners, when there are others equally important, and sworn duties, appears to me to be repugnant both to the spirit and letter of this Act. Why the summary remedy or punishment by suspension should be given in the case of negligence in obeying some special orders of the Commissioners, and should be denied for the non-performance of an equally important duty which he has sworn to perform, that of boarding a vessel in want of a Pilot, seems to me unsupported by any good reason. From the relation which exists between the Commissioners and the Pilot, every acknowledged duty on the part of the Pilot in discharge of his business, as a Pilot, may be considered as a duty due to the Commissioners. The obligation to board a vessel in want of a Pilot, cannot be denied; it is specified among his sworn duties; the neglect to perform this duty is, in my view, a cause of suspension. It was suggested in the argument at the bar, that the Legislature had, to some extent, construed this 7th section, for as much as in the 10th section it is declared, that to encourage Pilots, as much as may be, to attend the bars, all and every licensed Pilot, bringing any vessel safe from sea, shall have the preference of bringing such ship or vessel up and down the river, and to sea again, &c. It does not strike me, that the encouragement, which is here offered to the vigilance of the Pilot, in attending the bar, can be considered as dispensing with punishment for the neglect of the duty. In other words, the offer of reward does not necessarily imply exemption from punishment. It was also insisted that the Commissioners themselves had so constructed the 7th section, because in the 6th of the old, and 12th of the new rules of the board, is to be found a similar provision with that already referred to in the 10th

section of the act ; and because in the 7th of the old, and 13th of the new rules, it is declared, that the neglect of the Pilot to go on board a vessel, when required, shall be punished by forfeiture of double the amount of the Pilotage of such vessel. The first is subject to the answer given to the argument based upon the 10th section of the act. And as to the second, however forcible the argument may be, if the legislature had annexed the punishment of forfeiture of a given sum to the neglect or refusal to go on board a vessel, the Commissioners cannot legislate away the act of Assembly, and it remains to enquire when the case shall arise, what effect can be given to this rule of the board. It was also contended that the negligence, charged in this instance, is punishable under the 5th section of the act, and reference is made in support of this argument, to that part of the decision of this Court, upon a former occasion,* which declared " that the neglect or refusal of a Pilot to board a vessel, when he can, knowing her to be in want of a Pilot, from the exhibition of signals or otherwise, if damage ensue to her on that account, will subject such Pilot to be proceeded against, according to the provisions of the 5th section of the act." But as it was then said, these two sections have in view, totally different objects; the one is between Master and Pilot; it is a remedy given to the Master for the recovery of damages, which he may have sustained in consequence of the refusal of the Pilot to do his duty; the right under this section exists only where damages have been sustained. The 7th section vests a controlling power directly in the Commissioners, over the Pilot, a part from any question of damages. It is again argued that the proceeding under the 7th section, being a criminal nature, must be by indictment, information, or action on the statute. The tribunal by whom this sentence has been past, is one not proceeding according to the course of the common law. The act under which they proceed, prescribes no method by which the powers delegated to them are to be carried into effect. There are certain principles, however,

---

* *Supra*, page 299.

recognized by all judicial tribunals in our country, founded upon the obvious dictates of justice, which must be observed. Among them are these : that the party accused must know with what he is charged, that an opportunity be afforded him to attend his trial, and make his defence ; that a reasonable time be allowed him to prepare for that defence, that the means be afforded him to compel the attendance of his witnesses, and of cross-examining the witnesses produced against him. Yielding obedience, (as it seems to me they have done in this case,) to the restrictions thus imposed by the principles of natural justice, the Commissioners must be left to adopt their own forms and mode of proceeding. An exception is taken to the form of judgment. It is contended that the resolution of suspension, though in the nature of a judgment, is not a judgment. Upon this subject, the return discloses, that the evidence being closed, the chairman referring to the charge upon the docket as is herein before stated, propounded the question, "Is John Low guilty of the charge above laid and declared against him ?" when the board decided that he was guilty. It was then, upon motion, resolved that the warrant or license of John Low, a Pilot of this port, be annulled and revoked, and that he be henceforth totally suspended, and be deemed incapable to receive and take any fee, gratuity or reward, for the guiding or piloting any vessel or ship, inward to, or outward from, the port of Savannah. This, it is said, is nothing more than the opinion of the Court ; it is their determination and sentence, and not the sentence of the law ; that they should have proceeded, " therefore, it is considered by the Court," *ideo consideratum est per curiam*, which implies that the judgment is the act of law, pronounced by the Court after due deliberation. 3 *Bl. Com.* 396. Whatever strictness and technical precision may have existed at one time, as to the forms of pleading and entering verdicts and judgments, the practice and tendency of the Courts have been, to relax that strictness, and to disentangle justice of those more formal fetters which impeded her march, without rendering her progress more certain. In our own

state, this has been carried very far by the legislative enactment of 1818, (*Prince*, 228)—which declares, that when there is a good and legal cause of action, plainly and distinctly set forth, and a copy in substance is served, that every other objection shall be, on motion, amended without delay or additional costs, and that no special pleading shall be introduced or admitted. It is true, the discretion of the Courts, on the subject of amendment is limited whilst the proceeding is yet *in paper*, and that after it becomes a record, it can only be amended by some of the statutes of *jeofails*. But it was admitted that the 16 and 17 *Car.* 2, ch. 8, had brought the cases upon verdicts, within the statutes of *jeofails*. A judgment, therefore, of defective form, entered in a civil case upon a verdict, would be clearly amendable, or in other words, the effect of the statute is to dispense with this nicety of form in relation to the judgment. It is difficult in my view, to find a reason why this strictness should be departed from, in regularly established tribunals proceeding according to the course of the common law, and should be dispensed with rigor and exactness to summary and extraordinary jurisdictions. And the rule, as *I* understand it, is precisely the reverse. These tribunals are held with the utmost strictness, within the exact limits of the jurisdiction prescribed to them by Statute, but they are reviewed with the utmost liberality as respects regularity and form. *Cowp. 19, Ld. Raymond*, 80, and numerous cases in the different States. I have been considering this point, assuming as true, the other exception made in connexion with it, that the office of a Pilot is a freehold; that it vests such an interest in him, as cannot be taken away, but by regular judicial process. It does not appear to me, however, that the office of a Pilot is a public office: it is a private profession, trade, or calling, which the legislature has subjected to certain regulations and restraints; previously to which, any person who chose, might exercise the employment of a Pilot. The legislature by the act of 1799, have declared that such persons shall hereafter be chosen and licensed by the Commissioners, from their fitness and

competency to act as Pilots. When so licensed, they acquire a right in this pursuit, which doubtless is a species of property, because a man's trade or calling is his property. But the right which is here acquired, is subject to all the restrictions imposed by the act, and liable to be forfeited for any of the reasons specified in it. It is taken, subject to all controlling powers vested in the Commissioners by the act. In 2 *Burr.* 740, the judgment was, "having taken the case into consideration, and fully weighed the same, said assembly did then and there order that the said T. I. B. W. should be removed and discharged from his said place and office of one of the capital Burgesses &c. and the said T. I. B. W. was then and there accordingly removed and discharged." In 2 *Burr.* 727, it was then and there moved that the said &c, should be removed &c. therefore having weighed and considered the charge, they did then and there, discharge and remove. Numerous cases of this kind may be cited, where the judgment is only the resolution, order or sentence of the body acting. It has been adjudged in *Connecticut*, that a judgment by a justice of the peace, which answers the issue, and on which execution was granted, will not be reversed, because it did not say that the party should recover, and that execution should issue. 3 *Day's Cases*, 502. So also a judgment of the County Court, declaring all the estate of defendant forfeited to the State of *Connecticut*, rendered on legal and regular process, and on due enquiry into the facts, cannot be considered as void, but is valid in law, till reversed, although the entry of the finding of the facts should merely state, "that the Court having heard evidence relative to the defendant's going with the enemies of the United States, and considered thereof, are of opinion that the real and personal estate of the said defendant be, and the same is forfeit." *Allen* vs. *Hoyt*, Kirby, 221. In the case in 6 *Wheaton*, 127, which was cited at the bar for another purpose, the order of the County Court, as disclosed by the transcript, was "on motion it is ordered, adjudged, and decreed." This is only equivalent with, "It is resolved."

[John Low vs. Commissioners of Pilotage.]

Several of the exceptions go to the testimony. In consequence of the absence of some of the witnesses, as disclosed by the return, the meeting was adjourned to a further day, and for some reason not disclosed, the final decision, after taking testimony, was adjourned to the then next regular meeting. The defendant was summoned each time; the first and third summonses stated the charge in the same manner; the second was for negligence of duty, in not boarding ship Helen Mar, in want of a Pilot, on the 29th and 30th September last. It is objected, that these charges, being different, the evidence taken at one meeting, could not be read at another. There is some slight difference in framing the summonses, but the charge is substantially the same. It was one offence which was investigated throughout. Mr. *Low* attended the first and second meetings, and made no objection to the testimony; and if improper evidence be admitted and not objected to at the time, the party is concluded; he is taken to have consented, *qui tacet consentire videtur*. But at the third meeting, which the defendant did not attend, the evidence of *Fortescue*, which had been taken at the second, was read over to a witness who was under examination, and whò confirmed it. This was certainly an irregular mode of proceeding. But the liberality extended to such tribunals as this, reaches as well the regularity, as the form of their proceedings. The defendant had been regularly summoned; he might have been present if he would, and might have objected to the course pursued. Defect and informality in the evidence, is not always a good ground for a motion for a new trial, in Courts whose duty it is to proceed regularly. It is further objected that the Commissioners were bound to dispose of the case at the first meeting, and the power to adjourn is denied to them. The powers essential to the fair and impartial administration of justice, are incidents of every Court. The right to adjourn, under peculiar circumstances, is sometimes essential to the attainment of justice. That a party is to be hurried to trial, unprepared, and without even an opportunity of procuring the attendance of his witnesses is so

pregnant with injustice, that I have considered the principle, which requires this opportunity to be afforded, as pervading and controll-ing the jurisprudence of our country; and yet it is to this extent that the position contended for, would lead us. It requires that the cause should have been decided at the first regular meeting, at which the defendant below was summoned to appear. Now, how-ever important it may have been to the defendant himself to obtain time, it could not have been granted him. If the right to adjourn exists for the convenience or even necessity of the defendant be-low, it must exist for any good and sufficient cause. At the ad-journed meeting the defendant attended, and was asked if he took any exceptions to the examination of testimony, on the ground of its being an adjournment of a regular meeting, to which he replied that he did not. I take it to be pretty well settled, that if a party appear and go to trial, it is a waiver of any objection to an ad-journment irregularly granted. There can, therefore, be no ob-jection to the adjourned meeting, and the cause was finally disposed of at the second regular meeting after the defendant had received his first summons. The argument deduced from the delay of jus-tice, in these summary jurisdictions, cannot be carried so far as to subvert justice.

The Act of the Legislature of 1825, authorizes the Mayor and Aldermen of the City of Savannah, to elect Commissioners of Pilot-age. Certain of the Commissioners who sat upon the trial, were appointed by the Mayor and Aldermen by *resolution.* It is ob-jected that the election should have been by ballot; but I am in-clined to believe, that in the absence of any prescribed mode of election pointed out in the statute, this was a good exercise of the power conferred on the Mayor and Aldermen by the Legislature. Various exceptions go to the constitutionality of the Acts of the Legislature regulating pilotage, and assert their violation of the Constitution of this State, and of the United States. It is said that the Constitution of the United States vests in Congress the exclu-

PART II.—O. 2.

sive right to regulate commerce, from which it is contended, flows the regulation of Pilots in sea-ports. But Congress has, expressly, by the Act of 1789, adopted the legislation of the different States upon this subject; still it is contended that whilst an existing law may thus be adopted, it is not competent to the Congress of the Union, prospectively to authorize the states to legislate upon a subject thus exclusively confided to Congress. But is it true that Congress has this exclusive power? The States do not legislate upon this subject, by virtue of authority derived from Congress; they are found in the possession and exercise of the power, and they retain the right to legislate upon this subject within their own territories and over their own citizens. If I am to consider myself as bound by the decisions of the Supreme Court of the U. States, upon questions in which the Constitution of the United States is involved, the only limit which would be put to the right of the States thus to legislate, within their territories and over their own citizens, would be, when such legislation interfered with, and was contrary to an Act of Congress passed in pursuance of the Constitution. (*Gibbons* vs. *Ogden*, 9 *Wheaton* 211.) In this instance there is no Act of Congress which can come into collision with the State legislation—the only Act which Congress has passed on the subject, being to adopt the Acts of the different States.

The next and last exception which I shall consider, suggests the violation of the Constitution of the United States, and of that of this State, relative to trial by Jury. I might, perhaps, with great propriety, content myself by putting the further consideration of these exceptions upon the ground taken at the bar, that the Constitutional validity of a Legislative Act, by which a special authority is delegated to Commissioners for special purposes, cannot be decided on, upon application for certiorari, or in any other summary way. The case of *Bullard* vs. *Bennett*, (2 Bur. 775,) decides that the validity of a by-law cannot be questioned upon the return of a process, or in any summary way. This authority was

cited in a case brought up from the Mayor and Aldermen of the city of Savannah, some years ago, by a late learned member of our bar, distinguished for his soundness as a lawyer, who contended that if the validity of a by-law could not thus be questioned, *a fortiori*, the Constitutional validity of a Legislative Act, could not. I confess myself strongly impressed by the force of the reasoning, then urged in support of the proposition. [*State* vs. *Noel*, 1 *Charlton's* Rep. 59.]

I proceed, however, to remark upon this exception, that I do not consider the act, for which the defendant below was proceeded against, as a crime within the meaning and sense of the 2d section of the 3d article of the Constitution of the United States, or the 6th article of the amendment thereto ; nor as a criminal proceeding or prosecution embraced within any provision of the Constitution of the United States ; neither do I consider it violative of the 7th article of the amendments of said Constitution.

The Constitution of this State of 1798, declares, " that trial by Jury, as heretofore used in this State, shall remain inviolate." In the Constitution adopted in 1777, and that in 1789, the expression " heretofore used" is omitted. As early as 1662, an Act was passed in this, then province of Georgia, for the regulation of Pilots, ( *Watk.* Dig. 75,) from which the Act of 1799 seems to have been copied, with those alterations which the wisdom of the Legislature at that time dictated. In the 2d section of the Act of '62, it was directed that the Pilot should be licensed by the Governor ; and in the 6th section, that the Commissioners should apply to the Governor, to revoke, or annul the warrant or license, for the same causes which are pointed out in the 7th section, Act of '99, as grounds of suspension. This Act continued in force, regularly revived, till 1783, when it was made perpetual. It is obvious, therefore, that the suspension of a Pilot for the very causes enumerated in the 7th section, *without trial by Jury*, was known, used and practised in Georgia, anterior to the Revolution, that it

was the law of the land at the adoption of the Constitution, and that in the very succeeding year after its adoption, the Legislature, with this provision of the Constitution staring them in the face, passed the Act of 1799, which did no more in this regard than transfer the power of suspending from the Governor to the Commissioners.   I am aware of the argument which has been sometimes used, that the trial by Jury being a common law right, all summary jurisdictions, newly created and unknown to the common law, which go to take away or abridge the trial by Jury, are infringements of the rights of the people.   In England where this common law right exists, and from whence it was originally derived to us, various jurisdictions of this kind exist, not sanctioned by the common law, but resting upon statute ; and apart from the Act in question, very many such jurisdictions existed, and were in use in this State, anterior to the Revolution and at the time of the adoption of the Constitution.   The argument would lead us to the abolition of all these, since the only summary jurisdiction which may be considered as fairly sanctioned and recognized by the common law, is that of Justices of the Peace.   The proceedings of these inferior judicatories, have at different times, and under various circumstances, passed in review before the Superior Courts of the State.   A contemporary exposition of the Constitution, practised and acquiesced under for a period of years, fixes the construction, and the Court will not shake or control it.   So also, it is a sound principle, that where there is *doubt* upon the Constitutionality of a law, the law ought to be sustained : it should be a clear case in which a law is declared unconstitutional.   When I reflect, that jurisdictions of this sort have been found necessary in all countries ; were established and used in Georgia previously to, and at the time of adopting the Constitution ; that the Act in question was passed the following year, and probably by many of those who framed the Constitution, and are to be presumed best acquainted with its meaning ; that those jurisdictions have ever since been acquiesced in by the people, and acted upon ; that by declar-

ing this Act unconstitutional, the whole of these summary jurisdictions, (except so far as they exercise the powers of Justices of the Peace,) must at once be swept away, however useful and important they may have been found, I confess myself unprepared so to pronounce it.

Having given to this case the patient investigation which the proper construction of this statute seemed to require, and which was demanded by the learning and research displayed in the argument, I feel myself constrained, as the result of my best reflections, to pronounce upon these proceedings a judgment of *affirmance*, and it is accordingly so ordered.

Judgment affirmed.

JNO. C. NICOLL, for plaintiff—M. H. McALLISTER, for defendant.